1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK W. CAPPELLO,<br><br>            Plaintiff,<br><br>     v.<br><br>DONALD STOHL, et al.,<br><br>            Defendants. | Case No: 1:24-cv-01365-EPG<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT THIS ACTION PROCEED ON PLAINTIFF'S CLAIM AGAINST DEFENDANT STOHL, ODONAUGHY, AND BRAGG FOR VIOLATION OF THE FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT BASED ON ALLEGEDLY PREVENTING PLAINTIFF FROM OBTAINING HIS MEALS AT THE TIMES DICTATED BY HIS RELIGIOUS BELIEFS, AS WELL AS PLAINTIFF'S CLAIM AGAINST BRAGG FOR VIOLATION OF THE FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT BASED ON ALLEGEDLY BLOCKING PLAINTIFF FROM RECEIVING RELIGIOUS FOOD ITEMS SENT IN FROM AN APPROVED RELIGIOUS VENDOR FOR USE IN ROSH HASHANAH SERVICES, AND THAT ALL OTHER CLAIMS BE DISMISSED<br><br>(ECF No. 13)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS<br><br>AND<br><br>ORDER DIRECTING CLERK TO ASSIGN DISTRICT JUDGE |

Plaintiff Mark W. Cappello (Plaintiff) is proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. On May 15, 2025, Plaintiff filed a second amended complaint alleging that he was denied religious accommodations. (ECF No 13).

Upon review, the Court finds Plaintiff only states a claim against Defendant Stohl, ODonaughy, and Bragg for violation of the Free Exercise Clause of the First Amendment based on allegedly preventing Plaintiff from obtaining his meals at the times dictated by his religious beliefs, as well as a claim against Bragg for violation of the Free Exercise Clause of the First Amendment based on allegedly blocking Plaintiff from receiving religious food items sent in from an approved religious vendor for use in Rosh Hashanah services. Thus, the Court will recommend that these claims proceed and that all other claims and Defendants be dismissed without further leave to amend.

Plaintiff has thirty days from the date of service of these findings and recommendations to file any objections.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking "redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). The Court must dismiss a complaint, or a portion of it, if the prisoner has raised claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

Because Plaintiff is proceeding *in forma pauperis*, the Court may also screen the complaint under 28 U.S.C. § 1915, which requires a court to dismiss a case if it is frivolous or malicious, fails to state a claim, or seeks monetary relief from an immune defendant. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii).

## II. PREVIOUS SCREENINGS OF PLAINTIFF'S COMPLAINTS

As background, Plaintiff has submitted two previous complaints, which the Court has screened.

On November 7, 2024, Plaintiff filed his initial complaint, which was 39 pages long and

1  in excess of the Court's 25-page limit for the electronic filing of prisoner litigation.  (ECF Nos.
2  1 and 10).  The Court issued a screening order finding that Plaintiff's complaint did not comply
3  with the Court's standing order or Federal Rule of Civil Procedure 8, and giving Plaintiff leave
4  to file a first a amended complaint.  (ECF No. 10).

On March 17, 2025, Plaintiff filed a first amended complaint.  (ECF No. 11).  Plaintiff's first amended complaint generally asserted that Defendants violated his constitutional rights by not providing sufficient religious accommodations over several years but failed to include facts about what accommodations Plaintiff requested, when and how Plaintiff made the request, and any response Defendants provided to the request.

The Court screened Plaintiff's first amended complaint and found Plaintiff failed to comply with Rule 8 of the Federal Rule of Civil Procedure that requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  (ECF No. 12).  This Court provided the following explanation of Rule 8's requirement of a short and plain statement of the claim and why Plaintiff's complaint did not comply with that rule:

> Instead of providing those specific facts, Plaintiff's first amended complaint generally refers to violations of religious accommodations over many years by many defendants, such as that Defendants "all disregarded Plaintiff's exercise of religion and greatly interfered with, intentionally blocked religious considerations/accommodations to correct known violations of federal and state laws, CDCR Policys in Dept. of Operations Manual of Jewish Kosher Laws and other prison staffs attempts to correct, by e-mails and in person multiple times by religious staff." These and other similar general allegations throughout Plaintiff's first amended complaint are conclusory and do not include specific facts that satisfy Rule 8's pleading requirements. For example, Plaintiff's first amended complaint does not allege specific facts as to any denial of religious accommodations such as what exactly Plaintiff requested, when Plaintiff made that request, in what way that request was based on a sincerely held religious belief, which specific Defendant received or responded to that request, what accommodation was or was not provided, and the reason given by any defendant for not agreeing to Plaintiff's request. Without this information, Plaintiff's allegations do not satisfy Rule 8 and do not give fair notice of Plaintiff's claim. Additionally, without those factual allegations, the Court cannot determine if the underlying facts would state a cognizable constitutional claim under the relevant legal standards.

(ECF No. 12 at p. 6).

The Court gave Plaintiff one further opportunity to amend his complaint, and provided

3

applicable legal standards for claims that could apply to his claim.

### III.    SUMMARY OF PLAINTIFF'S SECOND AMENDED COMPLAINT

On May 15, 2025, Plaintiff filed a second amended complaint (erroneously named "First Amended Complaint").  (ECF No. 13).  Plaintiff names the following defendants: (1) Donald Stohl, Captain at SATF, (2) Denise ODonaughy, food manager at SATF, (3) Jeanett Bragg, community resource manager at SATF, (4) Laura Sherwood, associate warden at SATF, (5) the City of Corcoran, and (6) Jeanett Bragg, Mayor of the City of Corcoran.[1]

In his second amended complaint, Plaintiff describes in general terms how he repeatedly complained to various prison officials about how he believed he was not receiving certain religious accommodations.  Plaintiff's complaint refers to specific communications and emails that he sent but did not receive a response to.  For example, Plaintiff describes how on he sent four inmate requests for interview on February 23, 2023, October 30, 2023, December 12, 2023, and December 27, 2023, but Plaintiff alleges he was never interviewed by staff at SATF.  (ECF No. 13 at pp. 6-7).  However, for the most part, Plaintiff does not describe what was said in this correspondence.

Additionally, Plaintiff at times makes generalized allegations regarding how "he went without a kosher dinner for months and years for Fridays and Sabbath meals were served not according to Jewish law or Kosher law."  (ECF No. 13 at p. 7).  Plaintiff also generally alleges that during Jewish holidays "he was denied access to Jewish services" and "deprived kosher meal solely because defendants Stohl, Bragg, and ODonaughy failed to provide and submit proper 'Jewish Law complient' [sic] memorandums describing the dates and times that services were to be held, which would give Plaintiffs housing and yard officers to allow him to attend said services."  (ECF No. 13 at p. 8).

Plaintiff alleges he submitted a grievance on December 20, 2023, and Defendant Sherwood denied his grievance "without contacting Chaplain D. Townson or Plaintiff" regarding "the overwhelming evidence and many emails."  He alleges Sherwood committed

---

[1] It appears that the two defendants listed as Jeanett Bragg are the same individual with different titles.

4

1  perjury and fraud by stating: "After a thorough review of all the documents and evidence
2  presented to the office of grievance it is the order of the office of grievance to DENY this
3  claim." (ECF No. 13 at pp. 8-9).
4        Plaintiff also alleges that Defendant Bragg "refused to allow religious food items sent in
5  from an approved CDCR religious organization 'Aleph Institute.'" (ECF No. 13 at pp. 10-11).
6  Plaintiff also generally alleges that on "many other documented dates and items sent from
7  'Aleph Institute' has been directed by the CRM to other staff to be thrown away or kept from
8  Plaintiff." (*Id*. at p. 11).
9        Plaintiff alleges that Defendants Bragg had "retaliatory motives" by giving him "a
10 write-up rule violation (CDC 128-B) notice" for "religious diet violation" on December 20,
11 2023, and September 11, 2024. (ECF No. 13 at p. 14). Plaintiff alleges Chaplain Townson
12 prevented the violations from being followed through by stating "it is not a violation." (*Id*.)
13       Plaintiff attaches three affidavits from other inmates that describe certain lack of
14 accommodations the inmates experienced over time. Mark Eugene Weyand states,
15 "Throughout these many years, the Jewish community experienced significant hardship by
16 being denied many religious services on holy days." Jon Robert Wilson states, "This past
17 Passover of 2024 I myself was refused participation in Passover because I was not provided
18 what/is necessary to observe Passover which is the Passover Ritualistic Elements even though I
19 was on the list." Joseph Jones states he was denied kosher meals because the meals were
20 served at the incorrect time.
21       Plaintiff's first claim alleges violations of "[t]he First, Fifth and Fourteenth
22 Amendments . . . along with California Civil Code 'Tom Bane Civil Rights Act.' Violations of
23 Freedom of Religion, due process, and equal protection of rights to exercise such religion."
24 (ECF No. 13 at p. 3). Plaintiff's second claim alleges "[t]he First and Eighth Amendments
25 violations of cruel and unusual punishment, retaliation of a protected class of religion . . . State
26 violations of California Civil Code, 'Tom Bane Civil Rights Act' by adverse actions against
27 Plaintiff." (*Id*. at p. 4).
28 \\\

## IV. ANALYSIS OF PLAINTIFF'S SECOND AMENDED COMPLAINT

### A. Section 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Id.* at 743-44. This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have

been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

### B. Due Process Claim

In his first claim, Plaintiff alleges that Defendants deprived him of his due process rights under the Fourteenth Amendment.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake. A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' . . . or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted); *see also Armstrong v. Reynolds*, 22 F.4th 1058, 1066 (9th Cir. 2022) ("'A section 1983 claim based upon procedural due process . . . has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process.'").

"[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure.").

Plaintiff's due process claim appears to be based on his allegations that various prison officials failed to respond to his emails or requests for interview, and generally failed to adequately communicate during the grievance process. For example, Plaintiff alleges "L. Sherwood, Grievance Reviewing Authority on 1/3/2024 gave "DENY" to this grievance without contacting Chaplain D. Townsen or Plaintiff regarding the overwhelming evidence and many e-mails sent by this Chaplain Townsen and a Rabbi, saying Plaintiff is correct." (ECF No. 13, at p. 8).

However, Plaintiff's allegations regarding the way that his grievances were handled do not state a constitutional claim under the due process clause. A failure of a prison to abide by their own grievance procedures may entitle a plaintiff to file a lawsuit without exhausting those

grievance procedures, but it does not state an independent constitutional claim. *See Ramirez v. Galaza* 334 F.3d 850, 860 (9th Cir. 2003) ("Ramirez's claimed loss of a liberty interest in the processing of his appeals does not satisfy this standard, because inmates lack a separate constitutional entitlement to a specific prison grievance procedure.").

Accordingly, Plaintiff fails to state a claim for violation of his due process rights.

### C.  Free Exercise Claim

Plaintiff alleges that Defendants violated his First Amendment right to exercise his religion.

"The Free Exercise Clause of the First Amendment, as made applicable to the States by the Fourteenth Amendment, forbids government from 'prohibiting the free exercise' of religion." *Fuqua v. Raak,* 120 F.4th 1346, 1352 (9th Cir. 2024). "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citation omitted). However, limitations of the inmates' rights "arise both from the fact of incarceration and from valid penological objectives– including deterrence of crime, rehabilitation of prisoners, and institutional security." *Id*.

"A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion." *Jones v. Williams,* 791 F.3d 1023, 1031 (9th Cir. 2015). "'A substantial burden ... place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id*. (citation omitted). Additionally, Plaintiff must allege that "(1) 'the claimant's proffered belief [is] sincerely held'; and (2) 'the claim [is] rooted in religious belief, not in purely secular philosophical concerns.'" *Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015) (quoting *Malik v. Brown,* 16 F.3d 330, 333 (9th Cir. 1994)); *Fuqua*, 120 F.4th at 1352 ("An inmate asserting a Free Exercise claim must first show that he or she has a sincerely held religious belief that was impinged by government action.").

"Inmates also have the right to be provided with food sufficient to sustain them in good

1  health that satisfies the dietary laws of their religion." *McElyea v. Babbitt,* 833 F.2d 196, 198
2  (9th Cir. 1987); *see also Long v. Sugai*, 91 F.4th 1331, 1335-38 (9th Cir. 2024) (holding a
3  Muslim inmate's free exercise of religion was substantially burdened where he received his
4  meals at 3:30 p.m. even though he could not break his fast for Ramadan until 7:30 p.m. and the
5  food was "cold, unappetizing, and potentially unsafe to consume").

6  In his second amended complaint, Plaintiff relies primarily on conclusory and vague
7  statements that "he was denied his religious freedoms and requirements of the Jewish kosher
8  laws, [and] deprived religious services." (ECF No. 13 at p. 7).  For the most part, Plaintiff does
9  not describe what religious accommodations he was denied, how he was denied access, and
10 who denied him access.

11 However, liberally construing his complaint, the Court finds that Plaintiff sufficiently
12 alleges that he did not receive sabbath and holiday meals at the time of day dictated by his
13 religious beliefs.  He alleges that, on October 26, 2023, an email was sent to Captain D. Stohl
14 "requesting accommodations for Jewish Faith inmates assigned to kosher dietary plan, receive
15 their meals at 1600 hrs. daily . . . ." (ECF No. 13, at p. 7).  Elsewhere, Plaintiff alleges "from
16 October 2022 to present 2025 these continued denials to accommodations/considerations
17 placed substantial burden on Plaintiff's religious rights to keep and exercise his faith . . . by
18 depriving Plaintiff kosher meals from Oct. 2022 threw [sic] present 2025 during the winter
19 months when the sun sets early.  This defendant(s) know or should know the 'sunset' is the end
20 of the Jewish day to follow Jewish laws." (ECF No. 13, at p. 9).

21 The Court next looks to whether Plaintiff has alleged that any defendant directly caused
22 Plaintiff's meals to be served at a time inconsistent with his religious beliefs.  Plaintiff's
23 primary factual allegations consist of claims that Stohl, Bragg, and ODonaughy received
24 Chaplain Townson's email regarding a "request for considerations/accommodations" but "did
25 nothing." (*Id*. at p. 8).  He also alleges that in 2023, "Jewish Religious days were deprived to
26 Plaintiff" "solely because defendants Stohl, Bragg, and ODonaughy failed to provide and
27 submit proper 'Jewish Law complient' (sic) memorandums describing the dates and times that
28 services were to be held." (ECF No. 13 at p. 8).  Based on these allegations, the Court will

9

permit Plaintiff to proceed on this claim against Defendants Stohl, Bragg, and O'Doonaughy.

The Court also recommends allowing a claim based on Plaintiff's allegation that Defendant Bragg refused to allow Plaintiff to receive religious items from an approved vendor. On this issue, Plaintiff alleges as follows:

> Defendant City of Corcoran Mayor J. Bragg was the head of her city and head of her SATF Office as "CRM" at the same time escalated the deprivations of Plaintiff's religious beliefs without compelling justification by on Rosh Hashanah 2023-24 refused to allow religious food items, sent in from an approved CDCR religious organization, 'Aleph Institute,' for this religious service were intentionally blocked by her alone to be used by Plaintiff. Causing additional deprivation of a religious right, for on October 4, 2024, a email again from Chaplin Townson to J. Bragg regarding this Jewish observance of Rosh Hashanah was denied knowing its use in the prayer services.

(ECF No. 13, at p. 11).

Courts have held that denial of religious items required for services or religious holidays can impose a substantial burden on an inmate's free exercise of religion. *See Jones v. Slade,* 23 F.4th 1124, 1145 (9th Cir. 2022) (reversing summary judgment and finding an issue of material fact existed as to whether exclusion of religious texts a Muslim inmate wished to read during Ramadan infringes on the inmate's right to engage in his sincerely held religious belief); *see also Rouser v. White*, 630 F. Supp. 2d 1165 (E.D. Cal. 2009) (denying summary judgment for Director of CDCR and prison warden who inhibited prisoner's free exercise of Wiccan religion by denying the prisoner access to chapel and various items, including incense, candles, and Tarot cards, required for Wiccan religious services).

Thus, liberally construing Plaintiff's complaint, the Court recommends allowing a claim for a violation of Plaintiff's First Amendment right to freely exercise his religion against Defendants Stohl, Bragg, and O'Donaghy for allegedly preventing Plaintiff from receiving his meals at the time of day required by his religious (Jewish) beliefs, and the Court recommends allowing a free exercise claim against J. Bragg for allegedly blocking Plaintiff from receiving religious food items sent in from an approved religious vendor for use in Rosh Hashanah services.

However, Plaintiff fails to sufficiently allege facts regarding any other deprivation of

his free exercise rights.

### D.  Retaliation Claim

Plaintiff's second claim alleges Defendants retaliated against him in violation of the First Amendment.

"[A] viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm that is more than minimal." *Watison v. Carter,* 668 F.3d 1108, 1114 (9th Cir. 2012) (citations and internal quotation marks omitted). A plaintiff can plead the fifth element "by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious . . . or that they were 'unnecessary to the maintenance of order in the institution.'" *Id*. at 1114-15 (9th Cir. 2012) (citations omitted).

Plaintiff alleges that he was subjected to adverse action when Defendant Bragg "and others" issued a write up for a religious diet violation on December 20, 2023, and September 11, 2024. Plaintiff, however, does not allege facts indicating that Defendants took the alleged adverse action against him because of his constitutionally protected conduct. Plaintiff also alleges that Chaplain Townson "prevented the violations" from being followed through with. (ECF No. 13 at p. 14). Thus, Plaintiff has also not alleged a chilling effect or a harm that was more than minimal as required to state a claim for retaliation.

Accordingly, Plaintiff fails to state a cognizable claim for retaliation in violation of the First Amendment.

### E.  Equal Protection Claim

In his first claim, Plaintiff alleges that Defendants also violated his equal protection rights.

1 "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  To state an equal protection claim, a plaintiff must allege facts plausibly showing that "the defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (citation omitted).  "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." *Maynard v. City of San Jose,* 37 F.3d 1396, 1404 (9th Cir. 1994), *as amended* (Nov. 22, 1994).

Plaintiff broadly alleges that he was denied equal protection rights.  However, Plaintiff fails to allege that he was intentionally treated differently from similarly situated individuals.  For example, Plaintiff does not allege that persons of other faiths received their meals at 1600 hours (or another set time of day), yet that defendants failed to provide similar accommodations to Plaintiff.  Rather, Plaintiff merely alleges in this claim that "All Defendants conduct is discriminatory because they treat Plaintiff differently than other Christians and Muslim inmates without rational basis for the desparate [sic] treatment."  (ECF No. 13, at p. 11).  Plaintiff's allegation is conclusory and lacks any supporting factual allegations regarding this alleged differential treatment.

Moreover, Plaintiff fails to allege that Defendants failed to provide him religious accommodation specifically because he was Jewish, in contrast to belonging to some other religion.

Accordingly, Plaintiff has failed to state a cognizable claim for violation of his equal protection rights.

**F.     Tom Bane Civil Rights Act**

In both of his claims, Plaintiff alleges that Defendants violated the Tom Bane Civil Rights Act.

"The Tom Bane Civil Rights act . . . was enacted in 1987 to address hate crimes.  The

Bane Act civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out 'by threats, intimidation or coercion.'" *Reese v. County of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (citation omitted); *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014) ("California Civil Code § 52.1 . . . provides a cause of action for violations of a plaintiff's state or federal civil rights committed by 'threats, intimidation, or coercion.'")

"The California Bane Act creates a cause of action against a person if that person 'interferes by threat, intimidation, or coercion ... with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States.'" *Sandoval v. County of Sonoma*, 912 F.3d 509, 519 (9th Cir. 2018) (citing Cal. Civ. Code § 52.1).

Plaintiff's second amended complaint contains no factual allegations stating Defendants engaged in interference with his rights by threats, intimidation, or coercion. Plaintiff's allegations are based primarily on Defendants' alleged inaction rather than any improper means to interfere with his protected rights. Accordingly, Plaintiff has failed to allege a claim for violation of the Tom Bane Civil Rights Act.

## IV.   CONCLUSION, ORDER, AND RECOMMENDATIONS

The Court has screened Plaintiff's second amended complaint (ECF No. 13) and finds that it states a cognizable claim against Defendants Stohl, ODonaughy, and Bragg for violation of the Free Exercise Clause of the First Amendment based on allegedly preventing Plaintiff from obtaining his meals at the times dictated by his religious beliefs, as well as a claim against Defendant Bragg for violation of the Free Exercise Clause of the First Amendment based on allegedly blocking Plaintiff from receiving religious items sent in from an approved religious vendor for use in Rosh Hashanah services.

The Court will recommend that all other claims and Defendants be dismissed without further leave to amend. The Court has screened Plaintiff's previous complaints on two occasions and provided him with the relevant legal standards. The Court finds that further leave to amend would be futile.

Accordingly, IT IS ORDERED as follows:

    1. The Clerk of Court shall assign a District Judge to this case.

Further, IT IS RECOMMENDED as follows:

    1. This case proceeds only on Plaintiff's claim against Defendant Stohl, ODonaughy, and Bragg for violation of the Free Exercise Clause of the First Amendment based on allegedly preventing Plaintiff from obtaining his meals at the times dictated by his religious beliefs, as well as Plaintiff's claim against Bragg for violation of the Free Exercise Clause of the First Amendment based on allegedly blocking Plaintiff from receiving religious food items sent in from an approved religious vendor for use in Rosh Hashanah services.

    2. All other claims and Defendants be dismissed without further leave to amend.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any objections shall be limited to no more than fifteen (15) pages, including exhibits. Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **June 17, 2025**             /s/ Erica P. Grosjean
                                               UNITED STATES MAGISTRATE JUDGE